Drylie Unemployment Compensation Case.

Drylie, Appellant, *v.* Unemployment Compensation Board of Review.

Argued November 17, 1947. Before RHODES, P. J., HIRT, DITHRICH, ROSS, ARNOLD and FINE, JJ. (RENO, J., absent).

*Ben Paul Jubelirer,* for appellant.

*Richard H. Wagner,* with him *T. McKeen Chidsey,* Attorney General and *Charles R. Davis,* Special Deputy Attorney General, for appellee.

OPINION BY HIRT, J., January 8, 1948:

Louis Carletti, as Carletti Distributing Company, was engaged in the wholesale and retail sale of bottled beer, by the case, in Pittsburgh. He employed eight men,

among them the claimant to whom he gave the title of assistant manager and warehouseman. Claimant's separation from his employment with Carletti occurred on October 11, 1946. He was not discharged and the question as to the reason for his unemployment was beclouded by conflicting testimony and by the averments of his claims for compensation before the Bureau and the Referee. He variously asserted that he had been "furloughed", because of lack of stock, and also "due to Brewery Dispute". On November 8, 1946, claimant started picketing his employer's business for the reason then given by him that Carletti had employed a negro truck driver. He ignored Carletti's request on November 11, 1946, that he return to work. Claimant was not frank in admitting the real reason for severing his employment until he appealed from the decision of the Referee, denying compensation, to the Unemployment Compensation Board of Review. In his petition he stated, as reason for his appeal that he had "Strike Status" and was entitled to "compensation after five weeks disqualification".

The Board found: "Claimant and other employes, approximately 7 in number, were members of Local No. 249 under the jurisdiction of Joint Council No. 40, A. F. of L. On or about October 11, 1946, claimant's union notified the employer that the beer he was handling was 'unfair', that handling this beer was a violation of the union's agreement with him, and that members of the union had been ordered not to handle it. Notwithstanding this notice, the employer decided that he would continue handling the same kind of beer. *Claimant and his fellow union members then went out on strike*". The Board also found: "Claimant did not thereafter return to the establishment, except to picket the place, and on March 11, 1947, was still unemployed and on the picket line although several other union members, no longer considered in good standing in their union, had returned to work". There is also the additional finding that "On

November 11th the employer offered claimant work as the manager of a distributing place in Hays Borough on the outskirts of Pittsburgh, operated by the employer's wife. Although there was no strike at this place, claimant refused to accept the job because it would have involved handling beer which his union termed 'unfair' ". The Board concluded that the referred employment was suitable and that claimant was barred by his refusal of it, without good cause, under §402(a) of the Unemployment Compensation Law as amended May 29, 1945, P. L. 1145; 43 PS 802(a), and §4(t) of the amended act, 43 PS 753.

*After* the decision of the Board of Review, counsel for claimant entered into a writing with counsel for the Board stipulating facts not developed at any of the hearings. The stipulation provided that the additional facts were to "be considered by the Superior Court in the determination of this appeal". The significance of these facts, before us by this novel procedure, were for the Board in the first instance and not for us. However, if it is true, as stipulated, that claimant's union had an agreement with Carletti's wife, as well as with Carletti, to the effect that she "shall not deal with any person or concern who has been declared to be unfair by the Union", it would seem that claimant had good cause for refusing the referred employment if his leaving the employment of Carletti for the same reason was upon good cause. Both Carletti and his wife indicated that they intended to continue handling Pittsburgh beers and claimant's union had notified both of them that it had declared these beers 'unfair'. In our view the Board was right in its conclusion that claimant was not entitled to compensation but was wrong in the reason upon which it rested its decision.

In point of actual fact the record before us in this appeal discloses little which bears directly on the underlying reason for claimant's unemployment except the bald contention, without adequate explanation, that his

Union had stigmatized his employer's beer as 'unfair'. While we might well take judicial notice of the fact that this appeal arose out of the widespread "Beer War" in Pittsburgh, we were so informed specifically at the oral argument. Hence, the following background of the present controversy is most significant:

The unions which were the authoritative bargaining agents representing the workmen in the Pittsburgh breweries, were affiliated with the Congress of Industrial Organization and these unions had contracts with the breweries which would not expire until April 1, 1947. The workmen in the breweries had no grievances against their employers as to working hours, rate of pay or other conditions of their employment. A minority of the employees in bottling departments of the breweries, members of a former independent local, organized or joined the Teamsters Union No. 232 of the A. F. of L. and this union ordered a strike in the breweries in the vain hope of raiding the C. I. O. and compelling the brewers to recognize Local 232 of the A. F. of L. as the authoritative bargaining agent in place of an affiliate of the C. I. O. The employers were innocent bystanders. The breweries, bound by the existing labor contract with the C. I. O. union affiliates, were powerless to deal with the striking A. F. of L. union. In any view of the facts therefore, neither the breweries nor the beer which they produced could be 'unfair' in any respect to any union. The strike within the breweries by local 232 A. F. of L. was purely a jurisdictional contest. Cf. opinion in *Duquesne Brewing Company of Pittsburgh v. Unemployment Compensation Board of Review,* filed this day. Without any foundation in fact, claimant's union, Local 249, had characterized the Pittsburgh beers as "unfair", purely as a subterfuge to give some color of an industrial dispute to a contest for union control which in fact was wholly jurisdictional. The strike against Carletti, at most, was in sympathy and in support of a strike of another A. F. of L. union in the Pittsburgh breweries.

Since the strike in breweries by Local Union No. 232 did not have a single aspect of an industrial dispute, the present sympathy walkout by Local Union No. 249, in support of that strike, cannot be regarded as resulting in unemployment from an industrial dispute in any sense. Claimant therefore is not entitled to compensation under §402(d) of the Act, 43 PS 802(d).

The same principles which bar claimant from compensation under §402(d) with even greater force renders him ineligible to unemployment benefits under §402(b) of the Act. The shifting ground upon which claimant made his first claims for compensation, as well as other circumstances in this case, suggests that he entered into the strike of his own volition. The testimony is insufficient to support a finding that claimant's union actually called the strike. At most under the evidence the action of his union was advisory, and claimant picketed Carletti's business only after he had been informed that members of his union had stopped work in other similar establishments. But even if the strike was called by claimant's union, his unemployment nevertheless must be regarded as voluntary in contemplation of the Unemployment Compensation Law. A sympathy strike in support of another strike actually resulting from a bona fide industrial dispute does not wholly bar the sympathy strikers from compensation under the present law. They who thus make an industrial dispute of others their own, are entitled to compensation after the statutory period of disqualification under §402(d). *Phillips v. Unemply. Comp. Board,* 152 Pa. Superior Ct. 75, 30 A. 2d 718; *Barnas v. Unemp. Comp. Board,* 152 Pa. Superior Ct. 429, 33 A. 2d 258. But where as here the sympathy strike is in support of another strike which has no aspect of an industrial dispute, none of the striking employees are entitled to benefits during the period of their unemployment. Unemployment compensation under such circumstances is not contemplated by the act and is not within its purpose as declared in §3 of Art. I,

43 PS. 752. This section is a declaration of public policy but within definite limits. And the unemployment of a workman, who even on order of his union joins in a sympathy strike for an illegal purpose, is in violation of the declared purpose of the act and must be regarded as voluntary and without good cause.

Decision affirmed.